# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### January 10, 2012 Session

## STATE OF TENNESSEE v. DEREK COLEMAN

**Appeal from the Criminal Court for Shelby County**
**No. 0906588     James C. Beasley, Jr., Judge**

**No. W2011-00144-CCA-R3-CD  - Filed June 25, 2012**

The defendant, Derek Coleman, was convicted by a Shelby County jury of voluntary manslaughter, employing a firearm during the commission of a felony, and aggravated assault, all Class C felonies.  He was subsequently sentenced to six years for the voluntary manslaughter conviction, six years for the firearm conviction, and five years for the aggravated assault.  On appeal, he raises the single issue of sufficiency of the convicting evidence.  Following review of the record, we conclude the evidence is sufficient and affirm the convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

William C. Gosnell (on appeal) and Coleman Garrett (at trial), Memphis, Tennessee, for the appellant, Derek Coleman.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Amy P. Weirich, District Attorney General; and Anita Spinetta and Michael McCusker, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Procedural History

The charges against the defendant arose from actions taken by him at a family bar-b-que on July 4, 2009. The defendant was present at the home of Adrian Merchant, the defendant's aunt, for a family get together that evening. Also present was James Balentine ("Mr. Balentine"), Ms. Merchant's boyfriend, and his son, James A. Balentine ("Anthony"). At some point during the evening, after several drinks had been consumed, Anthony and his cousin, Marlone Powell, were doing karaoke in the backyard where several people had gathered. Anthony noticed that the defendant and his father appeared to be having an argument. He was only able to hear bits and pieces of the conversation but noted that the defendant was acting "in an aggressive manner" towards his father. When Anthony observed the defendant push his father on the head, he intervened. The two men "start[ed] tussling," with Anthony swinging his fist at the defendant, and his father remaining between the two men.

Other people there, including Marlone, stepped in and broke the men apart. Anthony started walking away towards the house. However, he had made it only a few feet before he heard gunshots and immediately fell to the ground. When he looked behind him, he observed the defendant holding a small revolver. Upon rising, Anthony ran into the house, ran through the house, and out the front door. He went to a neighbor's home across the street and had them take him to get medical assistance for his gunshot wounds.

Back at the home of Adrian Merchant, Mr. Balentine learned that his son had been shot. Mr. Balentine went into the kitchen where he picked up a pair of kitchen shears or a knife and proceeded back outside to confront the defendant. Marlone had remained outside with the defendant and was unsuccessfully attempting to calm him down and retrieve the gun. He observed Mr. Balentine approach, saying "You shot my son." However, while Mr. Balentine was still several feet away from the defendant, the defendant proceeded to fire five shots from his gun. Mr. Balentine was hit multiple times and fell to the ground near the patio of the home. He died as a result of these wounds.

Based upon these actions, the defendant was indicted by a Shelby County grand jury for voluntary manslaughter, employing a firearm during the commission of a felony, and aggravated assault. Following a trial by jury, he was convicted as charged. He was subsequently sentenced to six years for the manslaughter conviction, six years for the firearm conviction, and five years for the aggravated assault. Due to the imposition of partial consecutive sentencing, the defendant received an effective sentence of twelve years. Following the denial of his motion for new trial, the defendant filed the instant timely appeal.

**Analysis**

On appeal, the defendant has listed three issues for which he seeks review: "(1) that

-2-

the jury verdict was contrary to the weight and sufficiency of the evidence adduced at trial; (2) the evidence as addressed at trial does not ris[e] to [the] level to carry the burden of proof of guilt beyond a reasonable doubt and to a moral certainty; [and] (3) that the honorable trial judge erred [by] not granting a motion for judgment of acquittal or not granting a motion for a new trial when self defense was raised." Although worded differently, each of these issues is essentially a challenge to the sufficiency of the convicting evidence. We review as such. Moreover, it appears that the defendant is challenging only the sufficiency of the evidence with regard to his voluntary manslaughter and aggravated assault convictions.

When an accused challenges the sufficiency of the convicting evidence, the standard of review is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *State v. Franklin*, 308 S.W.3d 799, 825 (Tenn. 2010); *see also* Tenn. R. App. P. 13(e). "[T]he State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000); *see also State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). Questions involving the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and an appellate court does not reweigh or re-evaluate the evidence. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003).

A jury verdict approved by the trial court accredits the State's witnesses and resolves all conflicts in the evidence in favor of the State. *Id*. "Because a verdict of guilt removes the presumption of innocence and imposes a presumption of guilt, the burden shifts to the defendant upon conviction to show why the evidence is insufficient to support the verdict." *State v. Thacker*, 164 S.W.3d 208, 221 (Tenn. 2005). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

As noted, the defendant challenges only his convictions for voluntary manslaughter and aggravated assault. He does not contest the fact that he actually did commit these offenses; rather, he challenges the convictions only upon the ground that he was justified to commit the offenses under a theory of self-defense. He bases this contention of the facts that Anthony Balentine jumped into the fight and "threw the first punch," and that James Balentine was proceeding toward him armed with either scissors or a knife.

Voluntary manslaughter is "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." T.C.A. § 39-13-211(a) (2010). An intentional act occurs "when it is the

person's conscious objective or desire to engage in the conduct or cause the result." T.C.A. § 39-11-302(a). A person acts with a "knowing" mental state "when the person is aware that the conduct is reasonably certain to cause the result." T.C.A. § 39-11-302(b). The determination of whether "adequate provocation" for an offense exists is a question left to the jury as the trier of fact. *State v. Johnson*, 909 S.W.2d 461, 464 (Tenn. Crim. App. 1995).

Aggravated assault, as applicable in the case, occurs when someone "[i]ntentionally or knowingly commits an assault as defined in § 39-13-101 and . . . causes serious bodily injury to another or [u]ses or displays a deadly weapon." T.C.A. § 39-13-102(a)(1)(A), (B). Assault is defined as "[i]ntentionally, knowingly or reckless caus[ing] another to reasonably fear imminent bodily injury." T.C.A. § 39-13-101(a)(1), (2).

With regard to self-defense, our Code provides that "a person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force intended or likely to cause death or serious bodily injury, if:

> (A) The person has a reasonable belief that there is an imminent danger of death or serious bodily injury;
> (B) The danger creating the belief of imminent death or serious bodily injury is real, or honestly believed to be real at the time; and
>
> (C) The belief of danger is founded upon reasonable grounds.

T.C.A. § 39-11-611(b)(2). Moreover, the claim of self defense is essentially a fact question for the jury to determine. *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997).

Again, the defendant does not contest the sufficiency of the evidence of the elements of each of the offenses. His claim is based solely on his assertion that he was justified in committing these act because of self-defense. The defendant proceeded under this theory at trial. Testimony was given that Anthony Balentine did in fact "attack" the defendant who was engaged in an argument with his father. Testimony was also given that James Balentine proceeded out of the house in an angry manner and was walking toward the defendant armed with either a pair of scissors or a knife. In his brief, the defendant notes that he "asserted that he was not the initial aggressor and that the son initially attacked and knocked him down at the back yard fence and that he could not withdraw. Secondly, . . . he was attacked by the father with a butcher knife."

We agree with the defendant that he, as well as his mother and various witnesses at trial, did testify that Anthony Balentine did initially attack him, although only after the

-4-

defendant had physically assaulted Mr. Balentine. Moreover, there is no dispute in the record that Mr. James Balentine was approaching the defendant with some sharp object in his hand. This was the argument put forth by the defendant at trial. His argument on appeal urges us to ignore the fact that the jury heard all this testimony and, based upon the verdict, rejected it. As we have noted numerous times, it is not the province of this court to reweigh or reevaluate credibility determinations made by the trier of fact. *See Evans*, 108 S.W.3d at 236.

The jury in this case was properly instructed on self-defense. They heard the testimony presented by all the witnesses and acted within their prerogative to reject a claim of self-defense. *See State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). It is well-settled that whether an individual acted in self-defense is a factual determination to be made by the jury as the sole trier of fact. *State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993).

Regardless, our review of the record reveals that the evidence, viewed in the light most favorable to the State, is sufficient to support the verdicts imposed. Testimony established an altercation between family members began with an argument between Mr. James Balentine and the defendant. When that verbal argument was escalated by the fact that the defendant physically pushed Mr. Balentine, Anthony Balentine became involved. A scuffle between the men ensued. However, family members stepped in and separated the men, and Anthony Balentine was walking away when the defendant shot him in the back two times. The fact that Anthony Balentine was walking away from the defendant is sufficient to negate self-defense. The defendant's act of shooting him is sufficient to establish aggravated assault.

With regard to the voluntary manslaughter conviction, the evidence established that, upon learning that his son had been shot, Mr. James Balentine, picked up a pair of kitchen scissors or a knife and headed back outside to confront the defendant. The defendant, who had remained outside, saw Mr. Balentine exit and start to approach him. However, while Mr. Balentine remained some distance from him, the defendant shot him five times, which resulted in his death. Again, the jury was free to discount the defendant's assertion of self-defense in this case based upon the distance between the men and the excessive nature of the measures taken by the defendant. As such, the defendant's arguments are not well taken.

**CONCLUSION**

Based upon the foregoing, the judgments of conviction are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE